# IN RE NIMMY.

PATENTS; PATENTABILITY.

A pliable metallic capsule for bottles, etc., having applied to its inner surface a coating of material which becomes adhesive when moistened, *held* not to be patentable, as cemented appliances, such as envelopes, labels and postage stamps, requiring merely the application of moisture to put them in use, are old.

No. 108. Patent Appeals. Submitted November 21, 1898. Decided December 9, 1898.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Philip Mauro* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the refusal of the Commissioner of Patents to grant to the appellant, William Nimmy, a patent for an improvement in metallic capsules for bottles, jars, and other similar vessels. The application contains only one single claim, which is in these words:

" As an article of manufacture, a pliable metallic capsule for bottles, jars, and the like, adapted to be shaped to the neck or head of the latter, and having applied to its inner surface a coating of material which becomes adhesive when moistened."

In the opinion of the Board of Examiners, we find the previous condition of the art and the proposed improvement succinctly and well defined and described, as follows:

" The specification states that heretofore in applying the old capsule, commonly made of Betts metal, the method has been to apply the cement to the upper end of the neck of the bottle and then apply the capsule to the so-cemented bottle. The improvement consists of the old capsule with the cement put in it as an article of manufacture ready for use by the bottlers. The bottlers, as appears by their affidavits, like this thing because it relieves them from applying the cement at all either to the capsule or to the bottle. The capsule-maker has done the work for the bottlers. All that they have to do is to wet either the cement on the capsule or to wet the bottle and then apply the capsule to the bottle by use of the old machine for the purpose."

The previous mode of operation, it seems, had consisted in the application of the cement in its wet state to the neck of the bottle or jar, and thereafter putting on the plain metallic capsule, usually known as the "Betts" capsule, which was then compressed by a machine to the neck of the bottle or jar. And the purpose of this invention, as stated by the appellant in his specification, was " to provide a

metallic capsule of the class which can not be removed from the bottle, jar, or the like, without fracturing or tearing the capsule in such way that it can not be used again for purposes of fraudulent misrepresentation as to the contents of the bottle, jar, or the like."

The primary examiner in the Patent Office rejected the application on the ground that the device had been anticipated in several previous patents, notably one issued in England in 1892 to William P. Thompson. The Board of Examiners-in-Chief affirmed the decision of the primary examiner, but mainly on the ground of want of patentable novelty in the device; and the Commissioner affirmed the decision of the Board of Examiners-in-Chief, but mainly, if not exclusively, upon the ground of anticipation in the English patent to Thompson. The applicant has now brought the case here on appeal.

It seems to us that there is no patentable novelty in the appellant's device. It may be that the Thompson patent does not anticipate it. The Thompson device was for a stopper of paper-pulp, celluloid, or other similar substance, capable of expansion under the influence of heat, and subject to be again contracted in a lower temperature; and the use of metallic stoppers was specifically and in express terms excluded from it as undesirable. The stopper, which was rather in the nature of a cover than a stopper, had its inside rim coated with a kind of cement, which was expanded by the application of heat or hot water, and which thereafter by its subsequent contraction, caused the jar or bottle to become hermetically sealed, so as to preserve the contents of the vessel from contact with the outer air. The scope and purpose of the applicant's device are very different. The one is a label, the other a stopper or cover. The one becomes effective under the action of moisture; the other under the influence of heat, applied, it is true, by means of heated water. The purpose of the one is to guard against fraud and imposition; that of the other to preserve the contents of

the vessel from deterioration.   The effective principle of the one is adhesion; that of the other is sealing by the means of alternate expansion and contraction.   There is no doubt a certain similarity in the process and methods used; but in their operation and purpose the two devices would seem to present considerable difference.   But, however this may be, it seems to us that the applicant's device is not patentable.

The alleged invention, when analyzed, consists in transferring the cement from the bottle to the capsule, and having the latter prepared with the cement ready for use and requiring only the application of moisture.   But cemented appliances requiring merely the application of moisture, to put them into use, are old.   Such are envelopes, labels, postage stamps; and certainly when two things are to be made adhesive to each other by the means of cement, there can now be no exercise of the inventive faculty in placing the cement ready for use upon one of them.   Nor can there be any exercise of the inventive faculty in transferring the cement from one to the other, according as may be found most convenient in practice.   Under the old process it would not have been invention, instead of applying the wet cement to the bottle or jar, to apply it to the capsule.   One way would be just as obvious as the other.   And if there would be no invention in applying the wet cement to the capsule immediately before use, it is not apparent to us why it should be regarded as invention to prepare the capsule in advance with the wet cement, to let that cement get dry, and then to apply moisture when it was required to be used.   This seems to us to involve no more than the exercise of mere mechanical skill.   The previous art consisted in the interposition of cement between a jar or bottle and a capsule fitting over the neck of it, so as to cause the two to adhere.   Applying the cement either to one or the other in the first instance will be equally effective.   The result is the same in either case; and it is perfectly obvious that it is only a matter of convenience which article shall be

selected for the primary application of the cement. We find no invention in what the applicant has done—at the utmost only mechanical ingenuity.

We are of opinion, therefore, that the decision of the Commissioner of Patents should be *affirmed.*

*The clerk of the court will certify this opinion and the proceedings in the cause in this court to the Commissioner of Patents, according to law.*